## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BITTNER FAMILY LP and JOHN BITTNER, | No. 4:20-CV-01259 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### APRIL 8, 2021

## I.      BACKGROUND

On June 26, 2020, Plaintiffs, Bittner Family LP and John Bittner, ("Plaintiffs"), filed a complaint against Defendant, Transcontinental Gas Pipe Line Company, LLC ("Transco") in Pennsylvania state court.  Plaintiffs raised several claims sounding in Pennsylvania contract and tort law.  Transco removed the action to this Court, and subsequently filed a motion to dismiss the case.  Plaintiffs filed an amended complaint as of right, and Transco moved to dismiss again, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[8]

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[2]   *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[3]   *Id.* at 326 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]   *Id*. at 327.

[5]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313, 316, 319-20 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662, 678 (2009).

[8]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[11] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[12]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[14]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

[9] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[10] *Id.* at 678.
[11] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[12] *Twombly*, 550 U.S. at 556.
[13] *Iqbal*, 556 U.S. at 679.
[14] *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

alleged in the light most favorable to [the plaintiff]."[15]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[16]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[19]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[20]  However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[21]  It is permissible to

---

[15] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[17] *Iqbal*, 556 U.S. at 678.

[18] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[19] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[20] *See id.;* Fed. R. Civ. P. 12(d).

[21] *Id.* at 134.

consider full text of documents partially quoted in complaint.[22]  It is also

permissible to consider documents relied upon by plaintiff in drafting the

complaint and integral to the complaint.[23]  "However, before materials outside the

record may become the basis for a dismissal, several conditions must be met."[24]

"For example, even if a document is 'integral' to the complaint, it must be clear on

the record that no dispute exists regarding the authenticity or accuracy of the

document."[25]  It must also be clear that there exist no material disputed issues of

fact regarding the relevance of the document.[26]  In this matter, I find that these

conditions have been met as to the contracts at issue, which have been attached to

Plaintiffs' complaint.

### B.    Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which I must accept as true for

the purposes of this motion, are as follows.

Transco and Plaintiffs entered into a series of agreements, whereby Plaintiffs

gave Transco a right of way and easement across Plaintiffs' property to construct a

pipeline.[27]  When John Bittner negotiated the agreements with Transco, he was

unrepresented by counsel, despite the fact that he is "unsophisticated in oil and gas

---

[22]  *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996).

[23]  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

[24]  *Faulkner*, 463 F.3d at 134.

[25]  *Id.; see also, e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[26]  *Id.*

[27]  Doc. 12 ¶ 3.

and pipeline matters" and had "never negotiated a [right of way] agreement

before."[28]  Transco's agent, Greg Cade, told Bittner that he could do better without

an attorney.[29]  Transco intended to build a pipeline across an existing road on

Plaintiffs' property.[30]  Cade assured Bittner that Transco would restore the road to

its original condition and that Bittner did not need a lawyer to guarantee that

protection.[31]  On January 9, 2015, Plaintiffs and Transco entered into the Option

and Easement ("OE") agreement and the Purchase and Construction Agreements

("PCA").

Transco promised to restore the road to its original condition, such that

Plaintiffs could drive on the road.[32]  Before construction, the road and the hill upon

which it was built had a gradual turn and a gentle slope, and regular two-wheel

drive vehicles could drive on the road.[33]  After construction, that same road is not

curved, banked, or graded properly, and is now steeper than it previously was.[34]

The surface of the road itself has also changed.  Before construction, it had a hard

"fragipan" material, but now the surface is simply a soft grass.[35]  As of the result of

the changes made to the road during and after construction, Plaintiffs cannot access

---

[28]  *Id*. ¶¶ 18-19.
[29]  *Id*. ¶ 20.
[30]  *Id*.
[31]  *Id*. ¶ 21.
[32]  *Id*. ¶ 4.
[33]  *Id*. ¶ 7.
[34]  *Id*. ¶¶ 7,9.
[35]  *Id*. ¶¶ 7, 9.

part of the property by passenger car and have lost the use and enjoyment of the upper portion of the property.[36]

After construction was complete, Plaintiffs held multiple meetings with Transco, where Transco told Bittner that it would restore the road.[37]  Transco subsequently made two attempts to fix the problem.[38]  Those efforts were seemingly unsuccessful and negotiations broke down between the parties. Plaintiffs received an estimate from a company, which calculated that repairs to make the road drivable would cost approximately $500,000.[39]

### C.   Analysis

Plaintiffs raise five claims against Transco: (1) breach of contract; (2) declaratory judgment for breach of contract; (3) fraudulent inducement; (4) punitive damages; and (5) negligence.  Transco has moved to dismiss all five claims.  I address each in turn.  The motion to dismiss is denied as to Count 1 and granted as to all other Counts.  Plaintiffs will be granted leave to amend only Counts 3 and 5, should they elect to do so.

### 1.   Count 1 – Breach of Contract

Plaintiffs provide multiple theories as to how the breach of contract claim might survive dismissal.  Plaintiffs claim that: (1) Transco's obligations to the

---

[36]   *Id*. ¶ 10.
[37]   *Id*. ¶ 28.
[38]   *Id*. ¶ 29.
[39]   *Id*. ¶ 40.

Federal Energy Regulatory Commission support a finding of breach[40]; (2) the PCA requires restoration of the property at issue; and (3) various oral modifications to the parties' agreements indicate that Transco had to restore the property. Transco claims that none of the contracts it signed impose this obligation, and that oral modifications to the contracts were prohibited.

The first two avenues are closed to Plaintiffs for different reasons, but I find that the PCA did not clearly exclude subsequent oral modifications, and so Plaintiffs' claim under Count 1 proceeds to discovery.

In Pennsylvania, a claim for breach of contract must establish three elements: (1) the existence of a contract that includes its essential terms; (2) a breach of that contract; and (3) damages resulting from the breach.[41] No one disputes that contracts were formed between Plaintiffs and Transco. To establish a breach, however, a plaintiff must "identify the specific contract provision" the defendant breached.[42] Transco claims that there is no specific provision that

---

[40] Transco acknowledges that "construction of the pipeline and restoration of the property" must be "performed in accordance with the conditions" in an Order issued by Federal Energy Regulatory Commission and any applicable permits. Transco also asserts that if "Bittner is claiming that Transco has not complied with the FERC Order, that challenge must be made to FERC, not this Court." Doc. 21 at 2. That is correct. This Court has a limited role in adjudicating issues stemming from FERC disputes. *See UGI v. Sunbury LLC v. A Permanent Easement for 0.4944 Acres*, 2016 WL 3254986 (M.D. Pa. June 14, 2016). Plaintiffs offer no reason for this Court to overstep its bounds in adjudicating a FERC dispute.

[41] *Silva v. Rite Aid Corp.*, 416 F.Supp.3d 394, 401 (M.D. Pa. 2019).

[42] *Borrell v. Bloomsburg University*, 955 F.Supp.2d 390, 409 (M.D. Pa. 2019) (Caputo, J.).

required it to restore the road and hillside "to the same conditions that existed prior to construction of the pipeline, or any other condition."[43]

Plaintiffs allege that Transco's obligation to restore the property is outlined in the PCA.  Plaintiffs specifically point to a paragraph in the PCA titled "Temporary and Additional Temporary Workspace Easement."  That section reads as follows:

> Grantor does hereby permit and license unto Grantee, its successors and assigns, the right, privilege and authority to use during the pipeline construction and restoration period only the strip(s) of land identified as temporary workspace and/or additional temporary workspace as shown and described on Exhibit A to the Option and Easement Agreement, as amended. This permit and license shall terminate upon completion and construction and restoration of Grantee's pipeline facilities on Grantor's Property. No pipeline or other permanent facilities shall be constructed within the temporary workspace or additional temporary workspace areas.[44]

Plaintiffs focus on the second sentence, which explains when the temporary easement ends.  They believe that this "clearly placed a restoration obligation upon Transco," and that Transco "was obligated to place Bittner's 'Property' in the same drivable condition that existed prior to building the pipeline."[45]  But this reading is plainly incorrect because it omits contractual language in order to reach its conclusion.  Transco was not obligated to restore Plaintiffs Property.  Instead, this provision simply explained when the temporary easement would end.  And to the

---

[43] Doc. 16 at 10.
[44] Doc. 12 Ex. C.
[45] *Id*.  "Property" is a defined term meaning "the lands of [Plaintiffs] situated in Luzerne County." *See* Doc. 12 Ex. B-2.

extent it imposed any obligation on Transco, it would be to restore "[Transco]'s *pipeline facilities*" which are "on [Plaintiffs'] Property."[46]  This provision says nothing about the surrounding land, or the road, or the hillside.  While it may envision some restoration, it does not create any obligations that Transco needed to comply with, as far as Plaintiffs' broader property is concerned.  This is the only provision which Plaintiffs identify in their effort to show a breach of contract, and therefore, the claim must fail insofar as the Count is based on the text of the contract as written.

Next, I consider whether the alleged pre-contractual or post-contractual statements made by Transco to Plaintiffs, promising to restore the Property, justify denying the motion to dismiss.  The OE and PCA are fully integrated agreements.  The "issue of whether a writing constitutes an integrated contract is a question of law."[47]  "A contract is integrated if it represents a final and complete expression of the parties' agreement."[48]  This means that any previous promises that do not find their way into the contracts are not part of the final contract.  "Where a contract purports to be a complete legal obligation without any doubt as to its object or extent, it is presumed to reflect the whole legal right of the parties."[49]

---

[46]  Doc. 12 Ex. C.
[47]  *Lenzi v. Hahnemann Univ.*, 445 Pa.Super. 187, 195 (1995).
[48]  *Id*. at 195.
[49]  *Id*.

- 10 -

Each of the OE Agreements includes the following language:

> This Agreement and all Exhibits attached hereto and the unrecorded
> Purchase and Construction Agreement constitute the entire agreement
> and understanding of Grantor and Grantee with respect to the subject
> matter of this Agreement, and supersedes all offers, negotiations and
> any other written or verbal statements or agreements; (b) any
> amendments to this Agreement must be in writing and executed by
> both parties . . .[50]

The PCA has a somewhat similar provision:

> This Agreement and all Exhibits attached hereto, together with the
> Option and Easement Agreement and Exhibits attached thereto,
> constitute the entire agreement and understanding of Grantor and
> Grantee with respect to the subject matter of this Agreement, and
> supersedes all offers, negotiations and any other written or verbal
> statements or agreements.[51]

Each of the documents indicates that the written agreements supersede "all offers, negotiations and any other written or verbal statements or agreements." Therefore, any pre-contractual promises to repair are irrelevant to the question of breach, insofar as those promises were not included in the final agreements.

But it is unclear whether the documents signed by the parties foreclose oral modification of the PCA. To be sure, the PCA does not contain a provision banning oral modifications to the contract. That language is found exclusively in the OE agreements. Transco asks this Court to read the contracts together, based

---

[50]   Doc. 12 Ex. B-1, B-2.
[51]   Doc. 12 Ex. C.

on standard Pennsylvania contract principles.[52]  While the Court does not dispute the validity of that principle, Transco fails to explain away the specific language of the OE agreements.

The OE states that "any amendments to this Agreement must be in writing and executed by both parties."  The capitalized term "Agreement" appears to refer specifically to the OE documents, rather than the "entire agreement and understanding" between the parties, which also includes the PCA.  While the Court does read these documents together, Transco has not offered a convincing rationale to read a broader interpretation into this clause than what is specifically indicated by the text.  Had, for example, the OE required that "any amendments to this agreement" be in writing (using the non-capitalized term), the issue would be clearer.  That is not, however, what the OE says.  Therefore, I find that reading the contracts together creates at least some ambiguity, such that it would be inappropriate to dismiss the claim out of hand.[53]

Plaintiffs' request for specific performance, however, is denied.  Specific performance should "only be granted . . . where no adequate remedy at law

---

[52]  *See, e.g., Kropa v. Cabot Oil & Gas Corp.*, 609 F.Supp.2d 372, 376 (M.D. Pa. 2009), *on reconsideration in part*, 716 F.Supp.2d 375 (M.D. Pa. 2010) ("It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together.").

[53]  This ruling is made without prejudice to Transco's right to raise the defense again with more specific citations should Plaintiffs file a second amended complaint, or to otherwise raise the issue at the summary judgment stage.

exists."[54]  Plaintiffs' own pleading establishes that there is such a remedy available.

Plaintiffs allege that it "would cost approximately Five Hundred Thousand

($500,000) Dollars" to repair the property at issue.  Damages are only an

inadequate remedy when "there is no method by which the amount of damages can

be accurately computed or ascertained."[55]  Plaintiffs have clearly ascertained what

their damages would be, making specific performance an inappropriate remedy.

Therefore, while Plaintiffs may pursue a breach of contract claim and potentially

recover damages, they will not be entitled to specific performance.

## 2.    Count 2 – Declaratory Judgment

Plaintiffs' claim for declaratory judgment was essentially a repeat of their

claim for breach of contract.[56]  Transco correctly identified it as such.[57]  Plaintiffs

seek a declaration that Transco breached the contracts between the parties.  District

Courts "possess discretion in determining whether and when to entertain an action

under the Declaratory Judgment Act, even when the suit otherwise satisfies subject

matter jurisdictional prerequisites."[58]  This discretion empowers District Courts to

---

[54]  *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159 (3d Cir. 1999) (quoting *Clark v. Pennsylvania State Police*, 496 Pa. 310 (1981)).

[55]  *Id.* at 160.

[56]  *See, e.g.,* Doc. 12 ¶ 53 ("Plaintiffs pray for a declaration that Transco's failure to restore Plaintiff's [sic] road to pre-construction specifications as required by the PCA and confirmed by subsequent oral agreements constitutes a breach of contract.").

[57]  Transco also correctly notes that while Plaintiffs brought this claim under the Pennsylvania Declaratory Judgment Act, it is the federal Declaratory Judgment Act, "and not state declaratory judgment law [that] supplies the procedural law that governs this case." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.4 (3d Cir. 2017).

[58]  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

dismiss declaratory judgment claims "at the motion to dismiss stage when they duplicate breach of contract claims within the same action."[59]

Plaintiffs' declaratory judgment action raises the same issues, based on the same documents, and seeks the same relief as the breach of contract claim under Count 1.  This is definitionally duplicative, and therefore, I exercise discretion to dismiss this claim.  Leave to amend this claim will not be granted, because this claim is merely a regurgitation of the breach of contract claim.

### 3.    Count 3 – Fraudulent Inducement

Plaintiffs raise a claim for fraudulent inducement, which requires them to allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[60]  While pleadings are normally governed by Federal Rule of Civil Procedure 8, claims for fraudulent inducement must be pled with particularly, as required by Federal Rule of Civil Procedure 9.[61]

---

[59]   *Winslow v. Progressive Specialty Ins. Co., Inc.*, 2018 WL 6527323 at \*7 (M.D. Pa. Dec. 12, 2018).

[60]   *Harrison v. Cabot Oil and Gas Corp.*, 887 F.Supp.2d 588, 592 (M.D. Pa. 2012) (quoting *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. 2005)).

[61]   *See Williamsburg Commons Condominium Ass'n v. State Farm Fire and Cas. Co.*, 907 F.Supp.2d 673, 677-78 (E.D. Pa. 2012).

Plaintiffs say that they were fraudulently induced by promises Transco made both before and after the execution of the contracts at issue. Their fraudulent inducement claim fails for two reasons: first, any pre-contractual misrepresentations are barred by the integration clause of the contracts; and second, Plaintiffs' complaint does not adequately plead post-contractual misrepresentations.

Even if Transco had attempted to induce Plaintiffs into signing the agreement by promising to repair the land, bringing that claim would stall because the contracts are integrated. In Pennsylvania, "the parol evidence rule bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract."[62] And "fraudulent inducement claims are typically not allowed to proceed in Pennsylvania if the contract at issue is fully integrated because of application of the parol evidence rule."[63] Therefore, because Plaintiffs do not allege that the relevant representation was fraudulently or mistakenly omitted from the final contract, the claim for pre-contractual misrepresentations cannot survive. Plaintiffs failed to meaningfully address that argument by Transco, and I find no reason to deviate from this general rule.

---

[62] *First United Bank & Trust v. PNC Fin. Servs. Grp., Inc.*, 667 F.Supp.2d 443, 451-52 (M.D. Pa. 2009).

[63] *Id.*

As to the alleged post-contractual misrepresentations, they are simply not pled with particularity in the amended complaint.  Count 3 specifically pursues a theory based on Transco's statements before the execution of the agreement, which Plaintiffs claim were designed to induce them into signing the agreement, and without which Plaintiffs "would not have entered into the agreement at all."[64] There are no allegations that Plaintiffs refrained from filing this lawsuit because of any representations Transco made after the agreement was signed.  And even if Plaintiffs had alleged those facts, it is difficult to imagine how Plaintiffs could sufficiently plead that any such representations would have been made with knowledge of their falsity or recklessness as to their falsity.  Plaintiffs plead that Transco made multiple attempts at restoring the property; it is unclear how such representations could have been false if Transco tried several times to fulfill those promises.  Even pleading in the alternative does not save this claim, and this Court will not credit Plaintiffs' attempts to amend their pleading through their opposition brief.[65]

Even if this claim were not otherwise subject to dismissal, the gist of the action doctrine would bar the claim as pled.  The gist of the action doctrine is "designed to maintain the conceptual distinction between breach of contract claims

---

[64]   Doc. 12 ¶ 59.
[65]   *See Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ([T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.").

and tort claims."[66]  If the "duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract."[67]  But if the claim is based on a "defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[68]

To the extent Plaintiffs' claims are based on "precontractual statements" that "concern specific duties that the parties later outlined," the claim for fraudulent inducement should be dismissed.[69]  And similarly, it can be dismissed when the duty allegedly violated "arises out of Defendants' contractual promises . . . and not a broader social duty."[70]  Again, Plaintiffs' theory on pre-contractual statements is based directly on the duties outlined in the contract, and to the extent Plaintiffs plead any theory based on post-contractual statements (they do not), that theory is grounded in Transco's alleged contractual promises.  Plaintiffs have not identified any broader social duty in their complaint, and so this claim is properly dismissed.

---

[66]   *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).
[67]   *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 112 (2014).
[68]   *Id.*
[69]   *Wen v. Willis*, 117 F.Supp.3d 673, 681 (E.D. Pa. 2015).
[70]   *Downs v. Andrews*, 639 Fed.Appx. 816, 821 (3d Cir. 2016) (citing *Bruno*, 630 Pa. at 111-12).

Plaintiffs will be granted leave to amend, but only insofar as they can state a claim based on post-contractual statements by Transco.  Amending to include pre-contractual statements would be futile for the reasons identified above.

### 4.    Count 4 – Punitive Damages

Plaintiffs also plead a standalone claim for punitive damages, based on what they consider to be egregious behavior by Transco.  Pennsylvania law is clear, however, that punitive damages are not an independent cause of action; they are a remedy.[71]  Therefore, Plaintiffs' separate claim can be dismissed.

And even examining the allegations in the complaint, they would not state a claim supporting a request for punitive damages.  Punitive damages are an "extreme remedy available in only the most exceptional matters."[72]  A plaintiff must support such a request by alleging facts which show that the "defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others."[73]  Plaintiffs have not done so.  For example, they argue in briefing that Transco did not intend to restore their property, but the amended complaint alleges that Transco made multiple attempts at restoration.[74]  Simply put, the fact that Transco tried to fix the problem does not

---

[71]  *See Bair v. Purcell*, 500 F.Supp.2d 468, 502 (M.D. Pa. 2007) ("[P]unitive damages may not be pleaded as a separate cause of action under Pennsylvania law, but are merely a type of damage incident to an underlying cause of action."); *see also Bishop v. GNC Franchising LLC*, 403 F.Supp.2d 411, 425 (W.D. Pa. 2005); *Kee v. Zimmer*, 871 F.Supp.2d 405, 413 (E.D. Pa. 2012).
[72]  *Phillips v. Cricket Lighters*, 584 Pa. 439, 445 (2005).
[73]  *Id.* at 445.
[74]  *Compare* Doc. 20 at 25 *with* Doc. 12 at ¶ 68.

suggest reckless indifference to Plaintiffs' rights.  It is unclear how Plaintiffs could argue otherwise.

Plaintiffs' claim for punitive damages is dismissed.  If Plaintiffs amend again, they may try to plead additional facts that would support a request for punitive damages, but <u>not</u> as a standalone claim.

### 5.    Count 5 – Negligence

Plaintiffs' negligence claim also fails.  They do not identify any specific duty which Transco owed them.  Plaintiffs admit that their allegations on this issue are "thin."[75]  That is true.  Simply alleging that Transco breached unspecified "other duties" is plainly insufficient to establish a duty of care under Pennsylvania tort law.  Indeed, Plaintiffs' entire argument on this issue in briefing is plainly based on the alleged contractual breach.  As noted above, Plaintiffs' attempts to amend their pleading through their briefing and add new allegations is unavailing.[76]  Plaintiffs will be granted leave to amend, should they believe they can adequately establish an independent duty of care that would support a claim of negligence.[77]

---

[75]   Doc. 20 at 16.
[76]   *See Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).
[77]   Because I find Plaintiffs have not established any duty of care, I do not reach Transco's gist-of-the-action-doctrine argument.  It would be premature to consider that argument before Plaintiffs have established a duty, because the Court would be in a poor position to evaluate whether the tort and contract actions were truly separate from one another.  Should a second amended complaint be filed, I will consider the argument then, assuming Transco raises it again.

## III.   CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.  Plaintiffs are granted leave to amend, in accordance with the above. It is well settled in this Circuit that leave to amend should be "freely granted."

Leave to amend is denied, however, as to Count 2 and Count 4 (as an independent cause of action).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[78]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[79] Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[80]  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[81]  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."[82]

---

[78]   *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993).

[79]   *Burlington*, at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).

[80]   *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[81]   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[82]   *Id.*

As such, Plaintiffs will be given fourteen days from today's date to file a second amended complaint.  If no amended complaint is filed, the action will proceed on Count 1.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge